## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEIDI J. PATCHES, | : | NO. 4:23-CV-01877 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| FRANK BISIGNANO,[1] | : | |
| *Commissioner of Social Security*, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This is an action brought under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Heidi Patches's claim for disability insurance benefits under Title II of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference). For the reasons stated herein, the Court affirms the decision of the Commissioner.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.    BACKGROUND

## A.    Procedural History

In 2014, Patches applied for Disability Benefits under Title II of the Social Security Act (Tr., Doc. 7-5 at 2), and the Social Security Administration determined that she was disabled. Doc. 7-3 at 9. Five years later, however, the agency determined that Patches's disability had ceased. *Id.* at 32–34.

After exhausting administrative appeals, Patches filed a prior civil action in this Court, challenging the cessation determination. Complaint, Doc. 1 ¶ 11. The Court issued an order to remand that case. *Id.* ¶ 12; *Patches v. Kijakazi*, No. 20-1916, September 29, 2021, Order, Doc. 22. After remand and further proceedings, the ALJ decided on March 15, 2023, that Patches's disability ended on January 1, 2019. Second Tr., Doc. 8 at 16, 32. The ALJ's decision, therefore, became final. 42 U.S.C. § 405(g). Pending before this Court is Patches's appeal of that decision. Doc. 1.

## B.    The Continuing Disability Determination Process

To receive disability benefits under the Social Security Act ("Act"), a claimant must be unable to "engage in any substantial gainful activity

by reason of any medically determinable . . . impairment which can . . . result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant is disabled "only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). An impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

In cases involving a continuing disability review ("CDR"), entitlement to benefits will be reviewed periodically. 20 C.F.R. §§ 404.1594, 416.994; *see also Warne v. Saul*, No. 19-1489, 2020 U.S. Dist. LEXIS 215427, at *2 (M.D. Pa. Oct. 2, 2020). A claimant is no longer entitled to benefits where the medical condition improves to the extent that the claimant can engage in substantial gainful activity. 20 C.F.R. §§ 404.1594, 416.994. To determine whether there has been medical improvement, the ALJ must compare the medical severity of the current

impairment(s) to the severity of the impairment(s) present at the time of the most favorable medical decision finding the claimant disabled. *See* 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1)(vii). If an impairment is one subject to temporary remissions, such will not warrant a finding of medical improvement. 20 C.F.R. §§ 404.1594(c)(3)(iv), 416.994(b)(2)(iv)( D).

The Social Security regulations provide an ALJ with an eight-step inquiry designed to evaluate whether a claimant remains disabled. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). The claimant bears the burden of proof through the first seven steps. Thus, the claimant must "introduce evidence that his or her condition remains essentially the same as it was at the time of the earlier determination." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 308 (3d Cir. 2012), quoting *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984). The Commissioner bears the burden at the eighth step to "present evidence that there has been sufficient improvement in the [claimant's] condition to allow the [claimant] to undertake gainful activity." *Hagans*, 694 F.3d at 308, quoting, *Early*, 743 F.2d at 1007 (citation modified).

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity above the residual functional capacity. If so, then the disability has ended. 20 C.F.R. § 404.1594(f)(1).

At step two, the ALJ assesses whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the disability continues. 20 C.F.R. § 404.1594(f)(2).

At step three, the ALJ considers whether there has been medical improvement as defined in paragraph (b)(1). 20 C.F.R. § 404.1594(f)(3). The second example for section (b)(1) explains "[a]lthough [the claimant's] impairment is subject to temporary remission and exacerbations, the improvement that has occurred has been sustained long enough to permit a finding of medical improvement." 20 C.F.R. § 404.1594(b)(1). Temporary remissions "will not warrant a finding of medical improvement." 20 C.F.R. § 404.1594(c)(3)(iv). If medical improvement is shown, the analysis continues to step four, and if there has been no medical improvement, then it continues to step five. 20 C.F.R. § 404.1594(f)(3).

At step four, the ALJ determines whether the medical improvement found in step three relates to the claimant's ability to do work. If so, the analysis continues at step six. If not, the analysis proceeds to step five. 20 C.F.R. § 404.1594(f)(4).

At step five, the ALJ considers whether one of two sets of exceptions to medical improvements apply. 20 C.F.R. § 404.1594(f)(5). The first exception provides that claimant should no longer be considered disabled where (1) substantial evidence shows the claimant is the beneficiary of advances in medical or vocational therapy or technology related to the claimant's ability to work; (2) substantial evidence shows the claimant has undergone vocational therapy related to the claimant's ability to work; (3) substantial evidence shows based on new or improved diagnostic or evaluative techniques, the claimant's impairments are not as disabling as considered at the time of the most recent favorable decision; (4) substantial evidence demonstrates that any prior disability was in error; or (5) the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1594(d)(1)-(5). The second exception applies when: (2) the prior decision was fraudulently obtained; (2) the claimant does not cooperate; (3) the claimant cannot be found; or (4) the

claimant fails to follow the prescribed treatment that would be expected to restore ability to engage in substantial gainful activity. If none of the exceptions apply, then the disability benefits continue. 20 C.F.R. §§ 404.1594(e)(1)-(4). If, however, one of the first exceptions apply, analysis continues at step six. 20 C.F.R. § 404.1594(f)(5). If one of the second exceptions apply, benefits will end. *Id.*

At step six, the ALJ considers whether the claimant's impairment(s) are severe. 20 C.F.R. § 404.1594(f)(6). If the claimant's "current impairments in combination do not significantly limit [his/her] physical or mental abilities to do basic work activities," then those impairments will be deemed to be "not severe." *Id.* However, where a significant limitation is found, then the analysis proceeds to the next step. *Id.*

At the seventh step, the ALJ will consider the claimant's current ability to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). An ability to perform past relevant work precludes benefits. If the claimant cannot perform past relevant work, the analysis proceeds to the last step.

At step eight, the ALJ evaluates the claimant's ability to perform other work in the national economy, considering the claimant's RFC, age, education and past work experience. 20 C.F.R. § 404.1594(f)(8).

## C.    The ALJ's Decision

Here, the ALJ determined that the claimant's disability "ended on January 1, 2019, and the claimant has not become disabled again since that date." Doc. 8 at 32. The ALJ reached this conclusion after proceeding through the eight-step sequential analysis required by the Social Security Act for determining continuing disability. § 404.1594(f)(1)–(8).

At the outset, the ALJ determined a "comparison point decision" (CPD) which is the most recent favorable medical decision that found Patches disabled. Doc. 8 at 21, citing Doc. 7-3 at 11. At the time of CPD, Patches had chronic obstructive pulmonary disease (COPD) and asthma as her medically determinable impairments. *Id.*

At step one, the ALJ determined that Patches "did not engage in substantial gainful activity from the cessation date, January 1, 2019, to January 1, 2021, and from January 1, 2022, to July 1, 2022." *Id.* at 22. At step two, the ALJ found that Patches has the following medically determinable impairments: chronic obstructive pulmonary disease

(COPD), asthma, migraines and chronic non-intractable headaches, allergic rhinitis, essential hypertension, hyperlipidemia, depression and major depressive disorder, anxiety disorder, and borderline personality disorder. *Id.* The ALJ also determined that since "January 1, 2019, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Id.* At step three, the ALJ determined that medical improvement occurred on January 1, 2019, finding that "by January 1, 2019, there had been a decrease in medical severity of the impairments present at the time of the CPD (comparison point decision)." *Id.* at 24.

At step four, the ALJ determined that "the medical improvement is related to the ability to work," and proceeded to step six. *Id.* at 25. There, the ALJ determined that since January 1, 2019, "the claimant has continued to have a severe impairment or combination of impairments." *Id.* At step seven, the ALJ found that since January 1, 2019, the claimant has had the following RFC: "to perform medium work as defined in 20 CFR 404.1567(c) except the claimant must avoid concentrated exposure to extreme heat, wetness, and humidity, and she must avoid even

moderate exposure to fumes, odors, dust, gases, and poor ventilation." *Id.* at 26. At step eight, the final step, the ALJ found that since January 1, 2019, considering Patches's "age, education, work experience, and [RFC] . . . the claimant has been able to perform a significant number of jobs in the national economy." *Id.* at 30.

### D.   Issues on Appeal

Patches raises two issues on appeal:

(1)   Whether the ALJ erred by finding Plaintiff had medical improvement to her medically determinable impairments, such that she was not entitled to disability benefits for the entire period after January 1, 2019; and

(2)   Whether the ALJ erred in failing to consider proper non-exertional limitations for the time period after January 1, 2019, from Plaintiff's diagnosed and treated major depressive disorder, anxiety disorder, and borderline personality disorder, which the ALJ held to be non-severe.

Pl.'s Br., Doc. 12 at 1–2. In essence, Patches argues that the ALJ failed: (1) to properly account for all of claimant's limitations stemming from her severe impairments in the RFC; and (2) to hold her mental-health impairments as severe. *See id.* at 16–24. The case is fully briefed (Docs. 12, 14) and ready for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this

case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including the entry of final judgment. Consent Form, Doc. 5. The Court, adhering to the deferential standard of review outlined below, will affirm the decision of the Commissioner.

## II.  <u>LEGAL STANDARD</u>

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence

but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

12

The question before the Court, therefore, is not whether Patches is disabled, but whether the Commissioner's finding that Patches is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III.  **<u>DISCUSSION</u>**

For the reasons explained below, the Court finds that substantial evidence supports the ALJ's determination that Patches's formerly disabling impairments improved.

### A.  **Legal Benchmarks for the ALJ's Assessment of Continuing Disability Benefits under 42 U.S.C. § 423(f)**

To determine that a benefits recipient is no longer disabled, the agency must demonstrate, by substantial evidence, that the recipient's impairments have experienced "medical improvement" such that the recipient can "engage in substantial gainful activity." 42 U.S.C. § 423(f). This analysis requires an ALJ to compare the severity of the impairment at the time of the most favorable recent disability determination with the current severity of that impairment. 20 C.F.R. § 404.1594(b)(7), (c)(1).

Courts have found remand appropriate in continuing disability cases when an ALJ failed to make the required comparison. *See*, *e.g.*, *Kenneth v. Comm'r of Soc. Sec.*, No. 23-1101, 2025 WL 1439576, at *8–9 (M.D. Pa. May 19, 2025) (remanding because the record before the ALJ did not include the comparison point decision or any of the evidence that decision was based on); *Butler v. Kijakazi*, 587 F. Supp. 3d 223, 228 (E.D.

Pa. 2022) (finding remand required because the ALJ did not conduct the proper comparison of plaintiff's past and current medical evidence).

### B. Substantial evidence supports the ALJ's assessment of continuing disability.

#### 1. *Proper comparison to CPD*

The ALJ properly compared the medical severity of Patches's impairments at the time of the Comparison Point Decision (CPD) and her current impairments. *See* Doc. 8 at 24–25. At the time of CPD, Patches had asthma and COPD. *Id.* at 21.The ALJ found that while, at the time of the CPD, Patches had asthma attacks requiring "physician intervention, occurring at least once every 2 months or at least six times a year," and "frequent, recurring, acute exacerbations of COPD [chronic obstructive pulmonary disease] that required ER visits," current records "reflect good control of her respiratory symptoms on her conservative course of treatment." *Id.* at 24–25. The ALJ further cited to specific records (Exs. 5A, 7F, 8F, 12F) and articulated why the evidence "does not reflect frequent, ongoing exacerbations . . . compared to her functioning at the time of the CPD." *Id.* at 24. The ALJ concluded that Patches's "asthma and COPD remained largely controlled on her inhalers and medications," and that "she has not had frequent, recurrent

exacerbations of any respiratory impairment, compared to her functioning at the time of the CPD." *Id.* at 25. Therefore, the Court finds that substantial evidence supports the ALJ's assessment of Patches's continuing disability.

### 2. *Failure to include proper limitations in the RFC*

Patches argues that the ALJ failed to include proper limitations regarding her severe medical impairments in the RFC finding. Doc. 12 at 16. Specifically, Patches asserts that "substantial exertional and non-exertional limitations should have been included in Claimant's RFC due to her COPD/asthma, migraine headaches and mental-health related impairments, which, . . . would cause Claimant to be off task and to miss work to such an extent that she is unemployable." *Id.* The Court finds that the ALJ has properly explained the RFC findings as to the three severe medical impairments, Doc. 8 at 25 (finding Patches's COPD, asthma, and migraines/headaches as severe impairments), and why the ALJ excluded Patches's functional limitations stemming from these severe impairments.

At the outset, the ALJ assessed Patches's self-reported limitations. The ALJ explained that in her "Function Report, [Patches] alleged she

could lift no more than 15 pounds, her back hurts when she stands too long, and pushing and climbing too many stairs causes her to become short of breath." *Id.* at 27. Although the ALJ found that Patches's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms," the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects . . . are not entirely consistent with the objective medical and other evidence." *Id.* Put differently, the ALJ found that the objective medical evidence did not support Patches's asserted limitations.

The ALJ next explained the objective medical evidence as to each severe medical impairment. First, as to COPD, the ALJ explained that compared "to the time of the CPD, current records do not reflect frequent exacerbations of [Patches's] respiratory symptoms." *Id.* The ALJ found that Patches had one emergency room visit which did not require significant medical treatment. *Id.* And a CT scan of her chest and pancreas performed the following month, revealed no significant abnormalities. *See id.* at 27–28. Second, as to asthma, the ALJ explained that "in July of 2019, [Patches's] asthma was diagnosed as controlled on her medications," and she reported one flare-up in March 2020 which "did

not require any significant change in her course of treatment." *Id.* at 28. By October 2020, Patches "denied having any issues with her asthma." *Id.* Even after she resumed working, records "continue to reflect good control of her respiratory symptoms on her conservative course of treatment." *Id.* Third, as to migraines and headaches, the ALJ determined that these impairments have "remained generally well controlled." *Id.* In September 2018, Patches "stated she gets headaches 'once in a blue moon.'" *Id.* Thus, The ALJ reasoned that the "evidence does not support a need for extra breaks, given the good control of the claimant's symptoms on her conservative course of treatment." *Id.* at 29. Accordingly, substantial evidence supports the ALJ's RFC assessment. *See Davis v. Comm'r of Soc. Sec.*, 240 F. App'x 957, 960–61 (3d Cir. 2007) (finding that substantial evidence supports the ALJ's RFC determination because a plaintiff's limitation was not consistent with the medical evidence); *Sanchez v. Bisignano*, No. 24-1627, 2025 U.S. Dist. LEXIS 193285, at *19 (M.D. Pa. Sept. 30, 2025) (concluding that the ALJ

properly assessed a plaintiff's self-reported symptoms as not entirely consistent with the medical evidence).[2]

### C.    Substantial evidence supports the ALJ's determination that Patches's mental-health impairments are non-severe.

Patches next argues that the ALJ "completely ignore[ed] Claimant's mental-health disorders." Doc. 12 at 12. Not so.

After the ALJ "considered all of the claimant's medically determinable impairments[—]including those that are not severe[—]throughout [the] decision, including when assessing the claimant's residual functional capacity," the ALJ specifically found at step six that while Patches's "migraines and . . . headaches [are] severe," all other "medically determinable impairments alleged and found in the record are non-severe." Doc. 8 at 26. The ALJ reasoned that the mental-health disorders "did not exist for a continuous period of twelve months, were

---

[2] Patches also argues that the ALJ failed to include her mental-health related impairments. Doc. 12 at 16. As further explained below, however, the ALJ found the mental-health related impairments not severe but still assessed the resulting impairments in the RFC determination. *See* Doc. 8 at 26 (providing reasons why mental-health impairments were not severe); *id.* at 29 (explaining why mental-health impairments resulted in only mild limitations in the RFC determination).

responsive to medication, [and] did not require any significant medical treatment." *Id.*

As a threshold requirement to finding that an individual has an impairment, the physical or mental condition must be expected either: (1) to result in death; or (2) to last at least twelve months. SSR 85-28, 1985 WL 56856, at *1 (1985). Under 20 C.F.R. § 404.1520a(c)(2), an ALJ must consider how a claimant's impairments affected her ability to function on a *sustained* basis.

Here, because Patches received one month of conservative mental-health treatment which led to an improvement in her symptoms, allowing her to resume engaging in Substantial Gainful Activity only a few months after the treatment, the ALJ's finding of "mild" limitations from mental-health impairments is supported by substantial evidence. *See* Doc. 8 at 26, 29. Importantly, even if the ALJ had erred in finding Patches's mental-health impairments not severe, that error is harmless because the ALJ still proceeded to later steps in the disability determination. *Orr v. Comm'r of Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("But even without finding that all of [claimant]'s impairments were severe, . . . because the ALJ progressed to a later step, any error at

20

Step Two would not alter the remainder of the five-step process, much less the overall outcome"); *Oduro v. Kijakazi*, No. 21-78, 2022 WL 1215076, at *5 (M.D. Pa. Apr. 25, 2022) (finding any error with respect to evaluation of the severity of impairments harmless where the ALJ proceeded to later steps).

Such error may, however, be harmful when the ALJ fails entirely to discuss why impairments were not determined as severe. *See Powell v. Saul*, No. 18-2196, 2020 WL 3187195, at *6 (D.N.J. June 15, 2020) (finding remand warranted where an ALJ failed to provide a reason for omitting consideration of an impairment). But the ALJ here explained why the mental health related impairments are not severe. *See* Doc. 8 at 26, 29. Neither did the ALJ fail to discuss the non-severe impairments at later steps in the analysis. *See Diguglielmo v. Comm'r*, No. 17-3985, 2020 WL 5036214, at *2 (D.N.J. Aug. 25, 2020) (finding that remand is warranted because the ALJ did not further discuss plaintiff's non-severe impairments in the subsequent sequential analysis). Here, the ALJ completed both required analyses. Doc. 8 at 26 (explaining why mental-health impairments were not severe); *id.* at 29 (explaining why mental-health impairments resulted in only mild limitations in the RFC

determination). Thus, the Court finds that "a reasonable mind would accept as adequate to support [the ALJ's] conclusion" that Patches's mental-health impairments are not severe. *Berryhill*, 587 U.S. at 102.

## IV.    <u>CONCLUSION</u>

Accordingly, the Commissioner's decision is **AFFIRMED**.

An appropriate order follows.

Date: November 21, 2025                          <u>s/*Sean A. Camoni*</u>
                                                 Sean A. Camoni
                                                 United States Magistrate Judge